LATHAM BUDDINGTON *vs.* GENERAL INSULATED WIRE CO.

AUGUST 19, 1949.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

O'CONNELL, J. This cause comes before us on petitioner's appeal from a final decree of the superior court denying and dismissing his petition for review under the workmen's compensation act, general laws 1938, chapter 300.

The evidence discloses that the petitioner sustained an injury by accident arising out of and in the course of his employment with the respondent on February 18, 1941, when a cleaning preparation containing lacquer splashed into his eyes by reason of the breaking or snapping of a wire in a machine which he was operating. As a result of this injury the parties entered into a preliminary agree-

ment on March 21, 1941, wherein the respondent agreed to pay compensation at the rate of $7.76 a week during total disability, which compensation was based on his average weekly wage of $15.52. The injury was described in the agreement as "Conjunctivitis both eyes." Petitioner returned to work on May 28, 1941 at the same weekly wage of $15.52 and on that date he signed a settlement receipt, which was subsequently approved by the director of labor.

The petitioner thereafter worked steadily for the respondent and without further injury until February 10, 1945, when he again became disabled by reason of the injury sustained on February 18, 1941, and a new agreement was entered into under which the petitioner was to receive compensation at the rate of $7.76 during total disability. The cause of the injury was referred to in this second agreement, as in the first, as "Lacquer in eyes," and the nature of the injury was likewise referred to as "Conjunctivities both eyes." The settlement receipt under the above agreement covers a period of disability from February 10 to May 28, 1945.

On May 29, 1945 petitioner went to work for Fire Safe Builders Products Corporation, where he did general floor work, lumber work, power press operation, and occasional truck driving. He continued to work for that company without accident or injury until May 1947.

The instant petition was filed with the director of labor on June 5, 1947 and sought a review of petitioner's incapacity and additional medical expenses. At the hearing *de novo* in the superior court the petitioner was the only witness to testify for either side, but by agreement of counsel four medical reports were introduced in evidence by petitioner and one by the respondent.

The trial justice, by a decision in writing, denied and dismissed the petition and entered a final decree containing nine findings of fact. Findings numbered (1), (2) and (3) are to the effect that petitioner suffered a compensable injury on February 18, 1941, *viz.*, "conjunctivitis, both

eyes"; that he was disabled on two occasions thereby; and that he had received compensation in full therefor to May 29, 1945. The remaining findings of fact are as follows: "(4) That in May, 1947, the petitioner suffered bilateral keratitis and has since been afflicted therewith. (5) That the cause of the bilateral keratitis suffered by the petitioner is unknown. (6) That the petitioner, prior to May, 1947, had not had any contact with or exposure to lacquer for a period of several years. (7) That tests made at the Howe Eye Experimental Laboratory provided no corroboratory evidence for a recurrent herpetic infection. (8) That there is no causal relationship between the accident of February 18, 1941, and the present manifestation of the petitioner's bilateral keratitis. (9) That the incapacity of the petitioner is not due to the accident of February 18, 1941."

Petitioner contends that the findings of fact numbered (4) to (9) inclusive were without legal evidence to support them and were based upon evidence which was misconceived by the trial justice. It is clear from the preliminary agreement that petitioner had sustained an injury, *viz.*, conjunctivitis, arising out of the original accident of February 18, 1941. Therefore the ultimate and only issuable fact which the trial justice was called upon to determine in this petition for review was whether or not petitioner's incapacity after May 1947 was traceable to and caused in whole or in part by the injury, *viz.*, conjunctivitis, sustained on February 18, 1941 as set forth in the agreement.

The burden was upon petitioner to prove these facts by a preponderance of the credible evidence. *DeLallo* v. *Queen Dyeing Co.*, 73 R. I. 325; *Mahoney* v. *Merchants & Miner's Transportation Co.*, 70 R. I. 195. It is the presence of legal evidence in support of the findings of fact in the decree appealed from and not the weight of such evidence with which this court is concerned on review. Examination of the record is made "merely to determine if there is such

evidence and not to weigh it." *Bennett* v. *Grand Union Tea Co.*, 74 R. I. 480.

While the eighth and ninth findings refer to the causal relationship between the accident of February 18, 1941 and the petitioner's present condition, we interpret the word "accident" as used therein to mean the *injury* occasioned by such accident, *viz.*, conjunctivitis. The reason for such interpretation is that the petitioner's incapacity from the "injury" as stated in the agreement was the only issue involved in this cause. See *Manville Jenckes Corp.* v. *Lubinski*, 76 R. I. 36. We have carefully examined the transcript and the exhibits presented by the parties hereto and we are of the opinion that there is legal evidence therein to sustain the findings of the trial justice.

From the report of Dr. Joseph L. Dowling dated June 21, 1947 it appears that he had examined the petitioner on February 21, 1941, March 22, 1943, August 17, 1943, February 19, 1945, and May 23, 1947. That he had doubts as to the cause of the condition which he found on his last examination is evident from the language of his report. He stated that petitioner "has had two more severe recurrences while working elsewhere (Firesafe Builder's) and where he is not in any way exposed to lacquer fumes, etc. the original alleged cause." He further stated: "Every attack has resulted in no loss of industrial vision when the attack has subsided," and "I feel now further impartial study should be made, after Mr. Buddington recovers from this latest attack, and I suggest that he be examined at the Howe Laboratory, Mass. Eye and Ear Infirmary, Boston, *to determine the cause, if possible.*" (italics ours)

Pursuant to this recommendation, Dr. David G. Cogan of the Howe Laboratory was appointed by the chief of the division of workmen's compensation as an impartial medical examiner and his report, dated August 13, 1947, contains the following statements: "It is noteworthy that the lacquer caused no disturbance of the skin even though

patient got it on his hands abundantly. * * * Impression: Positive findings consist of superficial keratitis with pannus formation. It is not apparent to me what the cause of this is. I do not know of any incident in which lacquer or thinner has caused a similar condition. Inoculation of a rabbit's eye provided no corroboratory evidence for a recurrent herpetic infection, but this negative evidence does not necessarily rule out the possibility. * * * I regret that I cannot give a more definite diagnosis nor can I say whether or not the injury was produced by the exposure to lacquer."

The diagnosis of petitioner's condition by Dr. E. J. Bernasconi in his report of July 8, 1947 was "Recurrent Bilateral Keratitis." The report of the Rhode Island Hospital, dated April 26, 1948, shows that petitioner was admitted to the hospital on March 9, 1948 and remained there for sixteen days until his discharge on March 25, 1948, and that extensive physical and laboratory tests and examinations were made and full treatment was accorded to petitioner. The discharge diagnosis reads: *"Bilateral keratitis, etiology unknown * * *."* (italics ours)

The report of Dr. Raymond F. Hacking, to whom petitioner was sent for examination by his own counsel, was introduced as respondent's exhibit 1. It was dated June 21, 1945 and gave as his diagnosis that petitioner was suffering from "Superficial punctata keratitis" and further stated: "In my opinion the alleged injury is not responsible for the condition which I found in my examination."

From the above references to the evidence it is apparent that there was legal evidence, either direct or by reasonable inference, to support all questioned findings of fact contained in the decree appealed from. The evidence of Dr. Hacking alone clearly states that petitioner's present condition, whatever it may be called medically, was on this record not the result of his original injury, *viz.*, conjunctivitis, as set forth in the agreement. In the absence of

fraud, and none is claimed here, findings of fact supported by legal evidence are conclusive and cannot be disturbed.

The appeal of the petitioner is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

CONDON, J., dissenting. The medical reports obscured the real issue before the trial justice and, in my opinion, tended to lead him astray. The true office of those reports was to assist him in determining the condition of the petitioner's eyes and whether or not it was a recurrence of the original conjunctivitis which he received by the accident described in the preliminary agreement. However, the reports seem to show that the physicians who examined the petitioner were more concerned with determining whether the accident could have caused such condition. In that respect such reports were of no probative value because the question whether the accident could have caused petitioner's conjunctivitis was irrevocably closed by the filing and approval of the preliminary agreement. Insofar as they indicate that the existing condition of petitioner's eyes may be something in addition to conjunctivitis they would be of probative force, provided they showed that such new condition was the sole cause of petitioner's present incapacity and that the original conjunctivitis was not also contributing thereto. A brief reference to the reports shows that none of them definitely excludes conjunctivitis as a contributing cause. On the contrary two of them would seem to include it.

Doctor Joseph L. Dowling examined the petitioner on February 21, 1941 shortly after the accident, and again on March 22, 1943, August 17, 1943, February 19, 1945 and May 23, 1947. In his report of the last examination he stated that petitioner was suffering from *kerato-conjunctivitis*, both eyes. As to the former examinations he reported that petitioner "has had two more severe *recurrences* while working elsewhere * * * and where he is not in any way exposed to lacquer fumes, etc. the original

alleged cause." (italics mine) And he added, "I feel now further impartial study should be made, after Mr. Buddington recovers from this latest attack, and I suggest that he be examined at the Howe Laboratory, Mass. Eye and Ear Infirmary, Boston, *to determine the cause,* if possible." (italics mine) Apparently Dr. Dowling found that petitioner's condition was a *recurrence* of his old injury and he could not understand why it should recur when petitioner was no longer exposed to the lacquer fumes which had originally caused such condition.

An impartial examination of the petitioner was then made by Dr. David G. Cogan at the Howe Laboratory. He reported as follows: "It is noteworthy that the lacquer caused no disturbance of the skin even though patient got it on his hands abundantly. * * * Impression: Positive findings consist of superficial keratitis with pannus formation. It is not apparent to me what the cause of this is. I do not know of any incident in which lacquer or thinner has caused a similar condition. * * * I regret that I cannot give a more definite diagnosis nor can I say whether or not the injury was produced by the exposure to lacquer." It would thus appear that Dr. Howe was seeking to determine only whether the accident could have caused petitioner's injury. Indeed that was the express purpose of Dr. Dowling's recommendation that petitioner be examined at the Howe Laboratory.

Doctor Raymond F. Hacking examined the petitioner in June 1945. His report shows that petitioner then had moderate injection of the *conjunctiva* and superficial punctata keratitis. He further remarked in his report: "In my opinion the alleged injury is not responsible for the condition which I found in my examination." The majority treat that remark to mean that Dr. Hacking was expressing the opinion that petitioner's condition of moderate injection of the conjunctiva and superficial punctata keratitis was not the result of the conjunctivitis set forth in the preliminary agreement. I think they are mistaken in that

interpretation. In my opinion that remark was intended to convey the conclusion which the doctor had formed in common with Dr. Cogan that petitioner's condition was not caused by the accident. This is an instance not unusual in workmen's compensation cases, where the word "injury" is inadvertently used to mean "accident." Be that as it may it seems to me that Dr. Hacking also found, as did Dr. Dowling, that petitioner's condition consisted of a combination of conjunctivitis and keratitis. His report cannot reasonably be construed in any other way.

Doctor E. J. Bernasconi also examined the petitioner in July 1947. He reported petitioner's condition at that time as *"Recurrent* Bilateral Keratitis." (italics mine) Practically the same diagnosis appears on petitioner's discharge report at Rhode Island Hospital dated March 25, 1948. It would thus appear that Dr. Cogan and Dr. Bernasconi reported only keratitis and did not make any mention of conjunctivitis, but neither do they state that petitioner did not have conjunctivitis. And it must not be forgotten that we are dealing here not with testimony adduced by examination and cross-examination of the doctors but with a substituted form of evidence admitted by agreement. Such evidence leaves much to be desired on the score of definiteness and clearness.

In my opinion it is not clear from that evidence that keratitis is the sole cause of petitioner's incapacity or that his original conjunctivitis is not contributing to his present incapacity. Indeed it suggests, if anything, that the cause of such incapacity is a combination of conjunctivitis and keratitis. Certainly there is no evidence either that petitioner is not suffering from conjunctivitis or that it is not contributing to petitioner's incapacity. In other words, the evidence on the real issue in the case is to say the least in an obscure state. In my opinion it ought to be clarified before this workman is finally denied compensation. If his original conjunctivitis has recurred and along with keratitis has produced his present condition, as would seem to be

indicated by the reports of Dr. Dowling and Dr. Hacking, he would be entitled to compensation unless Dr. Bernasconi or Dr. Cogan intended to report that the petitioner was suffering *only* from keratitis which had no causal connection with his original conjunctivitis. A correct determination of the real issue in favor of the respondent is necessarily dependent upon at least some evidence of that nature. The present record is barren of such evidence and ought to be amplified in that respect, if possible, before a decree can be justly entered denying and dismissing this workman's petition.

In the circumstances, therefore, I am of the opinion that substantial justice will not be done unless we remand the cause to the superior court for further hearing. Hence I would sustain the appeal, reverse the decree appealed from, and remand the cause with directions to the superior court to reopen it for the sole purpose of hearing further evidence on the real issue in controversy as hereinbefore indicated.

*Michael DeCiantis, Fred Brosco,* for petitioner.

*Worrell & Hodge, Lee A. Worrell,* for respondent.